USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/7/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
CYBERNAUT CAPITAL MANAGEMENT LTD.  :
et ano.,                           :
                                   :
                    Petitioners,   :     13 Civ. 5380 (WHP)
                                   :
          -against-                :     MEMORANDUM & ORDER
                                   :
PARTNERS GROUP ACCESS SECONDARY    :
2008, L.P. et al.,                 :
                                   :
                    Respondents.   :
                                   :
----------------------------------X

WILLIAM H. PAULEY III, District Judge:

Petitioners Cybernaut Capital Management Limited and Oriental Financial Holding Corporation bring this action against Respondents Partners Group Access Secondary 2008, L.P.; Partners Group Access 89, L.P.; Partners Group Maple Leaf Secondary Fund 11, L.P. Inc.; Partners Group Access IV, L.P.; and Partners Group Global Value SICA V (collectively "Partners Group") to compel arbitration and for an anti-suit injunction barring a proceeding in the Cayman Islands. For the following reasons, Petitioners' motions are denied.

BACKGROUND

Cybernaut is a general partner in Cybernaut Growth Fund. Oriental and Partners Group are limited partners. The fund was formed in May 2008 as a Cayman Islands exempted limited partnership to make investments in China. (Complaint and Petition to Compel Arbitration and for an Anti-Suit Injunction ("Pet."), dated Aug. 5, 2013, ¶¶ 7, 8.) It is governed by a partnership agreement, which provides for arbitration of "any dispute arising out of or relating to [the] Agreement." (Pet. Ex. A §10.11(a).) The partnership agreement and the parties'

-1-

rights in the agreement are "governed by and construed in accordance with the laws of the Cayman Islands." (Pet. Ex. A §10.11(a).) The Partnership may be terminated and liquidated by agreement of the partners. (Pet. Ex. A §§8.1(b)(ii), 8.3(b).)

On May 27, 2013, Partners Group petitioned the Grand Court of the Cayman Islands to wind up the partnership. (Aff. of Anna Peccarino ("Peccarino Aff."), dated Aug. 5, 2013, Ex. 1.) Partners Group alleged that Petitioners failed to distribute partnership assets and breached the partnership agreement. (Peccarino Aff. Ex. 1 ¶¶ 8.1, 8.3.) Petitioners agreed that the partnership should be wound up but sought arbitration.

On June 20, 2013, Petitioners moved the Cayman Islands court to stay the proceedings in favor of arbitration, and on June 21, 2013, they filed a demand for arbitration with the American Arbitration Association. (Peccarino Aff. ¶ 7.) On June 25, 2013, the Cayman Islands court granted Partners Group's ex parte application to enjoin the arbitration pending the court's resolution of the motion to stay. (Peccarino Aff. ¶ 10.) The parties submitted briefing on the application to stay the proceedings in favor of arbitration, including Petitioner's submission of an expert opinion regarding the federal presumption in favor of arbitration, the scope of the arbitration clause, and the arbitrability of the dispute. On July 23, 2013, the Cayman Islands court denied Petitioners' motion to stay and found that the arbitration clause did not extend to the parties' dispute and that, even if it did, it would violate public policy. (Peccarino Aff. Ex. 9.)

The Cayman Islands proceeding is currently scheduled for trial on August 12, 2013. Petitioners fear that Partners Group's proposed liquidator would conduct fire sales of the Partnership's assets.

## DISCUSSION

I. Motion to Compel Arbitration

Petitioners argue that this Court should compel arbitration because the partnership agreement's arbitration clause governs this dispute and there is a strong federal policy in favor of arbitration. Partners Group argues that the dispute is non-arbitrable and that the doctrine of collateral estoppel bars Petitioner's motion to compel arbitration.

Generally, the doctrine of collateral estoppel precludes a party from relitigating in a subsequent proceeding an issue of law or fact that was decided in a prior proceeding. Under federal law, a party is collaterally estopped from relitigating an issue if "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." Boguslavsky v. Kaplan, 159 F.3d 715, 719-20 (2d Cir. 1998) (internal quotations omitted).

Additionally, "[u]nder federal law, the recognition of foreign judgments and proceedings is governed by principles of comity." Alesayi Beverage Corp. v. Canada Dry Corp., 947 F. Supp. 658, 663 (S.D.N.Y. 1996). "This Circuit has consistently extended comity 'whenever [1] the foreign court has proper jurisdiction and [2] enforcement does not prejudice the rights of United States citizens or violate domestic public policy.'" Alesayi, 947 F. Supp. at 663 (quoting Victrix S.S. Co. v. Salen Dry Cargo A.B., 825 F.2d 709, 713 (2d Cir. 1987)). Principles of fairness and reasonableness should guide domestic courts in their preclusion determinations. Alesayi, 947 F. Supp. at 663; Gordon & Breach Science Pub. v. Am. Inst. of Physics, 905 F. Supp. 169, 179 (S.D.N.Y. 1995).

Petitioners argue generally that the issues before the Cayman Islands court were not identical because the Cayman Islands court's decision was governed by a significantly different standard. "Issues are not identical when the standards governing them are significantly different." Alesayi, 947 F. Supp. at 666. Collateral estoppel is inappropriate when a previous proceeding applied a different statute of limitations or standard of proof. See Alesayi, 947 F. Supp. at 666 ("[T]he standards governing Alesayi's breach of contract claim in the Saudi action and the current action are significantly different—Alesayi need only prove its case by a preponderance of the evidence to this court while it had to meet a much higher, stricter standard before the Grievances Board."); Durkin v. Shea, 957 F. Supp. 1360, 1368 (S.D.N.Y. 1997). But the Cayman Islands court did not apply any different standards. That this Court, applying the same standards, might have come to a different result is irrelevant. Cf. Pariente v. Scott Meredith Literary Agency, Inc., 771 F. Supp. 609, 617 (S.D.N.Y. 1991) ("[C]ourts are not free to refuse to enforce a foreign [judgment] at the pleasure of the judges, to suit [] individual notion[s] of expediency or fairness."). Comity counsels respect for litigation in the courts of a sovereign nation. Royal & Sun Alliance Ins. Co. of Can. v. Century Int'l Arms, Inc., 466 F.3d 88, 94 (2d Cir. 2006). Courts that extend comity only to decisions they agree with do not heed comity at all.

This action involves issues identical to those raised in the Cayman Islands proceeding. It was litigated and decided in that forum. The parties fully briefed the application to stay the proceedings in favor of arbitration and Petitioners submitted an expert opinion regarding the federal presumption in favor of arbitration, the scope of the arbitration clause, and the arbitrability of the dispute. The Cayman Islands court nevertheless denied Petitioner's

application for a stay. That resolution, for collateral estoppel purposes, is final. See Zdanok v. Glidden Co., 327 F.2d 944, 955 (2d Cir. 1964); Chevron Corp. v. Donziger, 886 F. Supp. 2d 235, 270-71 (S.D.N.Y. 2012); see also Haber v. Biomet, Inc., 578 F.3d 553, 557 (7th Cir. 2009); Community State Bank v. Strong, 651 F.3d 1241, 1265 (11th Cir. 2011).

Petitioners argue that the Cayman Islands order (1) exceeds that court's subject matter jurisdiction and (2) offends United States public policy.

First, the Cayman Islands court had jurisdiction over both parties. Petitioners argue that courts have no role in determining disputes about arbitrability. But Petitioners never challenged the Cayman Islands court's jurisdiction. Instead, they argued that (1) the wind up petition should have been struck as an abuse of process because it should have been brought as a breach of contract claim and (2) the proceeding should have been stayed in favor of arbitration. (Decl. of Matthew Crawford, dated Aug. 5, 2013, Ex. 18.)

While a court's authority in disputes about arbitrability is narrow, it cannot be shirked. "In considering whether a particular dispute is arbitrable, a court must first decide whether the parties agreed to arbitrate." Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 95 (2d Cir. 1999). In such a dispute, courts must determine "whether a valid agreement or obligation to arbitrate exists." Jacobs v. USA Track & Field, 374 F.3d 85, 88 (2d Cir. 2004). Petitioners invoked Cayman Island jurisdiction in order to determine just that. Their argument that the Cayman Islands court lacked subject matter jurisdiction because it found that no valid arbitration agreement exists is meritless.

Second, the Cayman Islands court's order does not offend U.S. public policy. In the analogous context of enforcing foreign judgments, "[a] judgment is unenforceable as against

-5-

public policy to the extent that it is repugnant to fundamental notions of what is decent and just in the State where enforcement is sought." Ackermann v. Levine, 788 F.2d 830, 841 (2d Cir. 1986). "The standard is high, and infrequently met. As one court wrote, '[o]nly in clear-cut cases ought it to avail defendant.'" Ackermann, 788 F.2d at 841 (quoting Tahan v. Hodgson, 662 F.2d 862, 864 (D.C. Cir. 1981)). An order that clearly "undermines public interest, the public confidence in the administration of law, or security for individual rights of personal liberty or of private property is against public policy." Ackermann, 788 F.2d at 841.

"Through the [Federal Arbitration Act], Congress has declared a strong federal policy favoring arbitration as an alternative means of dispute resolution." Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co., 189 F.3d 289, 294 (2d Cir. 1999) (internal quotation marks omitted). "Litigation undertaken in a foreign forum by a party to that arbitration in an attempt to protect itself from an adverse arbitral award would, if indulged, tend seriously to undermine the underlying scheme of the FAA[.]" Telenor Mobile Communications AS v. Storm LLC, 584 F.3d 396, 410-11 (2d Cir. 2009).

But Partners Group has made no effort to avoid an adverse arbitral award or sidestep arbitration. See, e.g., Ibeto Petrochemical Indus. Ltd, v. M/T Beffen, 475 F.3d 57, 65 (2d Cir. 2007) ("We note, however, that the District Court's application of the principle that an anti-suit injunction may be proper where a party initiates foreign proceedings in an attempt to sidestep arbitration, is not warranted here, where the proceeding in Nigeria was first in time." (internal citations omitted)). On May 27, 2013, Partners Group brought its wind up petition seeking a remedy that can only be granted by a Cayman Islands court. Petitioners did not demand arbitration until June 21, 2013. Petitioners could have filed an arbitration demand when

this dispute first arose or filed their petition here when Partners Group made clear that it did not intend to arbitrate. Instead, they waited. They moved in the Cayman Islands to stay the proceedings in favor of arbitration. And, when they lost, they brought this action.

Petitioners had a full and fair opportunity to brief the Cayman Islands court on its motion to compel arbitration. That court considered those arguments and rejected them. Here, the strong federal policy in favor of arbitration has not been sidestepped. To date, no court has compelled arbitration in this case, and the only court to rule on whether this dispute is arbitrable has held that it is not.

Petitioners made a strategic decision to litigate this question in the Cayman Islands. They must live with the answer. Had Petitioners prevailed in the Cayman Islands, Partners Group would be bound by the ruling, and it is fair and reasonable to apply the same outcome to Petitioners. See Alesayi, 947 F. Supp. at 663. Petitioners have not alleged that either the Cayman Island's proceeding or its legal system was unfair or fraudulent. The Cayman Islands court found that the arbitration agreement was non-arbitrable. This decision neither offends fundamental principles of justice nor undermines public confidence in the administration of the law. Cf. Pariente, 771 F. Supp. at 617. Accordingly, that order is recognized.

II. Motion for an Anti-Suit Injunction

Even if Petitioners were not collaterally estopped from making their motion, this Court would not issue an anti-suit injunction.

Courts may impose an anti-suit injunction against parallel litigation only if: "(A) the parties are the same in both matters, and (B) resolution of the case before the enjoining court is dispositive of the action to be enjoined." China Trade & Dev. Corp. v. M.V. Choong Yong,

837 F.2d 33, 36 (2d Cir. 1987). Once this threshold is met courts consider five factors: whether (1) a policy in the enjoining forum would be frustrated by the foreign proceeding; (2) the foreign proceeding is vexatious; (3) the foreign proceeding constitutes a threat to the issuing court's jurisdiction; (4) the foreign proceeding prejudices other equitable considerations; or (5) adjudication of the same issue in separate actions would result in delay. China Trade, 837 F.2d at 35. "[P]rinciples of comity counsel, [however], that injunctions restraining foreign litigation be 'used sparingly' and 'granted only with care and great restraint.'" Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 653 (2d Cir. 2004) (quoting China Trade, 837 F.2d at 36).

Here, the parties are the same in both the Cayman Islands and these proceedings, and the resolution of this case would dispose of the Cayman Islands action. See Paramedics, 369 F.3d at 653. The five anti-suit injunction factors, however, call for denial.

First, "[f]ederal policy strongly favors the enforcement of arbitration agreements." Paramedics, 369 F.3d at 653. That policy "applies with particular force in international disputes." Paramedics, 369 F.3d at 654. When a foreign action is filed to sidestep arbitration, an anti-suit injunction may be necessary. Ibeto, 475 F.3d at 64. In such foreign proceedings "where [a domestic] court has already reached a judgment—on the same issues, involving the same parties—considerations of comity have diminished force." Paramedics, 369 F.3d at 655. But the reverse is also true: when a foreign court rules on a dispute first and a domestic court is called upon to countermand those findings—on the same issues, involving the same parties— considerations of comity are at their zenith.

Petitioners cite to a number of cases compelling arbitration and enjoining foreign proceedings. But in most cases, the party seeking to avoid arbitration only filed the foreign action after arbitration proceedings were already under way. Paramedics, 369 F.3d at 649; Amaprop Ltd. V. Indiabulls Fin. Svcs. Ltd., No. 10 Civ. 1853 (PGG), 2010 WL 1050988, at *2 (S.D.N.Y. Mar. 23, 2010); Storm LLC v. Telenor Mobile Commc'ns AS, No. 06 Civ. 13157 (GEL), 2006 WL 3735657, at *2 (S.D.N.Y. Dec. 15, 2006). And in no case did a party seek to compel arbitration in the foreign forum, lose, and then seek to enjoin the foreign proceeding. Ibeto, 475 F.3d at 59; Paramedics, 369 F.3d at 649; Amaprop, 2010 WL 1050988, at *2; Storm, 2006 WL 3735657, at *2.

This is not a case where Partners Group has sought to sidestep arbitration. See, e.g., Ibeto, 475 F.3d at 65 ("We note, however, that the District Court's application of the principle that an anti-suit injunction may be proper where a party initiates foreign proceedings in an attempt to sidestep arbitration, is not warranted here, where the proceeding in Nigeria was first in time." (internal citations omitted)). Here, Petitioners only sought to enjoin the foreign proceedings after they attempted to compel arbitration in the Cayman Islands and lost.

Second, the Cayman Islands proceeding is not vexatious. Petitioners argue otherwise because, among other things, the Cayman Islands court issued an ex parte anti-arbitration injunction. That is a mischaracterization. The Cayman Islands court merely stayed the arbitration proceeding pending its resolution of Petitioner's request to stay the Cayman Islands proceedings in favor of arbitration. Petitioners were given a full chance to brief that issue before the Cayman Islands court. Cf. Amaprop, 2010 WL 1050988, at *6 (finding that "Respondents have proceeded in the utmost bad faith" after they appeared in arbitration, asked

for additional time to file, and then sought injunctive relief in India on an ex parte basis and refused to supply Petitioner with the underlying papers); Storm, 2006 WL 3735657, at *9 ("The foreign litigation here has been conducted in the most vexatious way possible. Telenor has found its interests undermined by litigation to which it has not been made a party, and of which it has not even received notice until after orders have been entered.").

Third, the Cayman Islands proceeding does not threaten this Court's jurisdiction. This Court has personal jurisdiction over the parties by virtue of the partnership agreement. Petitioners concede that the Cayman Islands court also has personal jurisdiction over the parties. (Hrng. Tr. Re: Order to Show Cause, dated Aug. 7, 2013, at 14 ("Your Honor, there is no question we are subject to the personal jurisdiction of that court. There is no question. We are not denying that.").) Accordingly, "the threat to jurisdiction factor [does] not apply since both courts have in personam jurisdiction over the parties." Ibeto, 475 F.3d at 65.

Fourth, the proceedings in the Cayman Islands would not prejudice other equitable considerations in this forum. To the contrary, the equities weigh against allowing Petitioners an opportunity to relitigate issues they have already lost. Petitioners were served with the Cayman Island's wind up petition on June 8, 2013. They were on notice then that Partners Group did not intend to arbitrate this dispute. They waited until August 1, 2013 to file the petition in this Court to compel arbitration. Petitioners were content to litigate this issue in the Cayman Islands until they lost. Now they ask this Court to rule on the same issues and arguments they presented to a foreign tribunal. Deterrence of Petitioners' forum shopping counsels against any such ruling. Cf. Ibeto, 475 F.3d at 61.

Further, equity counsels against granting an injunction when a Petitioner "unreasonably and inexcusably delays seeking an injunction." Nat'l Council of Arab Ams. v. City of N.Y., 331 F. Supp. 2d 258, 265 (S.D.N.Y. 2004); Mussington v. St. Luke's-Roosevelt Hosp. Ctr., 824 F. Supp. 427, 434 (S.D.N.Y. 1993) ("[P]laintiffs may not forestall pursuing equitable remedies until the eleventh hour."). And Petitioners concede that they delayed seeking this relief. (Hrng. Tr. Re: Temporary Restraining Order, dated Aug. 1, 2013, at 5 ("They should have done it sooner. I concede that point. We should have done this more quickly.").)

Fifth, while parallel proceedings create a possibility of delay, inconvenience, expense, and inconsistency, these are problems of Petitioners' own making. "Parallel proceedings on the same in personam claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other." China Trade, at 36 (internal citations omitted). But, while parallel proceedings are the norm, such proceedings may frustrate the purpose of arbitration, which "is intended to be an expeditious and efficient means of resolving commercial disputes." Amaprop, 2010 WL 1050988, at *7 (internal citation omitted). Had Petitioners demanded arbitration immediately or filed this Petition earlier, they could have avoided cost and inconvenience. But they made a strategic decision to litigate the same issues in front of separate tribunals without regard to delay, inconvenience, expense, or inconsistency.

## CONCLUSION

For the foregoing reasons, Petitioners' motion to compel arbitration and for an anti-suit injunction is denied. The Clerk of Court is directed to terminate all motions, enter judgment for the Respondents, and mark this case closed.

Dated: August 7, 2013
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record:*

John Fellas
Hagit M. Elul
Steven G. Edwards
Hughes Hubbard & Reed LLP (NY)
One Battery Park Plaza
New York, NY 10004
*Counsel for Petitioners*

Steven H. Reisberg
Willkie Farr & Gallagher LLP (NY)
787 Seventh Avenue
New York, NY 10019
*Counsel for Respondents*